UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

CASE NO.: 2:09-20CR00180-003

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Vs. | ) | DEFENDANT GEORGE NORMAN'S |
| | ) | POSITION ON SENTENCING AND |
| GEORGE DUSEAN NORMAN | ) | REQUEST FOR A VARIANCE |
| | ) | |
| Defendant, | ) | |
| | ) | |

**I.     HISTORY OF THE CASE**

On March 3, 2020, a sealed Indictment was filed against Mr. Norman and 2 other defendants charging them with Conspiracy to Commit an offense Against or Defraud the United States. Pursuant to a written plea agreement, on September 7, 2022, Mr. Norman Plead guilty to Count One of the Indictment.

The defendant respectfully requests that this Court grant a variance sentencing the defendant below the advisory guideline range taking into consideration the factors set forth in 18 U.S.C. § 3553

**II.     IT IS RESPECTFULLY SUBMITTED THAT THIS COURT CONSIDER ALL THE RELEVANT FACTORS UNDER 18 U.S.C. §§3553(a) IN DETERMINING A SENTENCE THAT IS NO GREATER THAN NECESSARY TO ACHIEVE THE PURPOSES OFSENTENCING**

As this Court is aware, in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme

1

Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure was to declare the Guidelines merely advisory. See <u>Booker</u>, 125 S. Ct. at 757 (2005) (Breyer, J.). In 2007, the Supreme Court handed down two cases that emphasized that in the post-<u>Booker</u> world, federal judges have significant discretion to impose sentences below those called for under the Guidelines. <u>Kimbrough v. United</u> States, 128 S.Ct. 558 (2007), and <u>Gall v. United States</u>, 128 S.Ct. 586 (2007). These decisions, along with the recent ruling in <u>Spears v.United States</u>, 129 S.Ct. 840 (2009), reinforce and further clarify the rulings in <u>Booker</u> and <u>U. S. v. Rita</u>, 127 S.Ct. 2456 (2007), that the guidelines are merely advisory. Treating the Guidelines as advisory allows the Court to consider the guideline range calculation as merely one of many factors in determining a sentence *no greater than necessary to achieve the goals of sentencing* set forth in 18 U.S.C. § 3553(a)(2).

### III.     THE § 3553(A) SENTENCING MANDATE

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court considers several factors listed in Section 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2)(A) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2)(B) the need for deterrence; (2)(C) the need to protect the public; (2)(D) the need to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the Sentencing Guidelines range; (5) pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwanted sentencing disparities; and (7) the need to provide restitution to victims.

United States v. Eura, 440 F.3d 625 (4 Cir. 2006). While district courts must "consider" the Guideline range, United States v. Booker, 543 U.S. 220, 245-46 (2005), the Guidelines do not subordinate to the other factors in § 3553(a).  Sentencing courts have a duty to consider many factors, even factors prohibited by the formerly mandatory guidelines, in determining the type of sentence that satisfies the sentencing mandate of § 3553(a).  See, United States v. Abu Ali, 528 F.3d 210 (4 Cir. 2008).  The sentencing judge, after considering §§ 3553(a) and 3661 factors (including the Guidelines), has full discretion to sentence anywhere within the statutory range. The Court may impose a more severe or more lenient sentence as long as the final sentence is reasonable.  United States v. Go, 517 F.3d 216, 218 (4 Cir. 2008).

**IV.    FACTORS TO BE CONSIDERED IN DETERMINING A REASONABLE SENTENCE UNDER 18 U.S.C. § 3553 (a)(1)**

Pursuant to 18 U.S.C. § 3553 (a)(1), the Court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in 3553 (a)(2).  The Court in determining the particular sentence to be imposed, shall consider the nature and circumstances of the offense and the history and characteristics of the defendant.

The Pre-Sentence Report (PSR) as well as the presentation by the government at the time Mr. Norman entered his plea of guilty fully sets forth his conduct and the nature and circumstances of the offense.  While the PSR also addresses his history and characteristics, Mr. Norman would also like the court additional information a well.

The Defendant's Background

George was born and raised in Union City, New Jersey. He attended Emerson High School in Union City where he participated in many activities outside of academics. Those activities lead him to spend much of his time outside of class and afterschool at the school. For example, he was a member of the Emerson High School Bowling Team and as such spent many hours with fellow students and team members practicing for bowling matches. He enjoyed not only the competitions but also the opportunity to spend time in fellowship with friends and other students. When not bowling, George often spent time playing pool or basketball and acting as a "spotter" in the high school weight room.

George also spent after-school time at the school helping other students with their school work. In particular, he tutored struggling students in what he calls some of "those subjects that I seemed to get and that they were having trouble with." While he could not offer assistance in every subject and on every topic, he was willing to give his time to help where he could.

In addition to activities in and with the high school, George enjoyed spending time in his neighborhood. He played "left wing" on his neighborhood hockey team in the area hockey league where his team competed against teams from other neighborhoods. That also helped to teach him the concepts of teamwork, perseverance, goal setting, humility and character. George also enjoyed BMX Biking, in-line skating and swimming at the local pool with his friends. In other words, George grew up enjoying time with his friends and fellow students, helping those friends and students when he could and, as was the case in his team sports activities, working together with them toward common goals.

He was also active away from school and closer to home. He grew up in an apartment building within which he lived with his family. That family consisted of his mother and father, Lee and George Norman, along with three sisters, Tanya, Rochelle and Shannon. I addition, there were young nieces and nephews present in the house. George spent a lot of time with those nieces and nephews and, in particular, Tyreece and Curtis, whom he often took care of and played with. While the apartment wasn't that large and there was often a lot of family members there, it was a warm, fun and loving home.

George also spent time with other residents of his apartment building. His best friend's mother was the superintendent, so he helped her to keep things clean and to fix things that broke other otherwise needed attention. He also helped the elderly ladies that lived in the building with things like taking out the trash and bringing up the groceries.

His father worked in the local recycling department where he often came across various electronic devices that had been broken and thrown out or just not wanted anymore. George loved taking those devices and working on them to make them work again. He taught himself how to fix broken devices as well as how to operate such devices. He soon became in demand with other residents of the building where he would set up their computers, VCRs, TVs, stereos, radios and the like. If you couldn't make it work or work right, you called George. He was always happy to help. It was that interest that he focused on later in college.

George also grew up in a spiritual home. His family was and still is active as Jehovah's Witnesses. They spent much time in worship and fellowship at their local Kingdom Hall. It was also there that George learned about not only spirituality, but also how to be a good and productive

person.

George also had educational opportunities which he took advantage of. After high school, he attended. Lincoln Technical Institute where he majored in electronics and graduated as a trained electrical systems technician. After school, George continued to learn and otherwise improve his skills as an electrical technician and tower climber at Sky High Communications in Rock Hill, South Carolina. His relationship with Sky High Communications lasted for over 10 years. He still has the knowledge and know-how obtained in college and from Sky High and is ready to resume a successful career in that industry.

It is apparent that George Norman grew up in a loving and supportive family. He had friends and neighbors with whom he socialized and grew with. He attended and graduated from Lincoln Technical Institute where he was able to increase his knowledge he first acquired through "tinkering" with the electronics his father brought home. He was blessed with not only the opportunity to learn but also with ability to do so.

His is not the story of someone who was disadvantaged from the start. He did not live in a loveless home where he was not supported and abused. He does not claim that he is where he is today due to circumstance beyond his control. Like he has done with the specific allegations in this case, George is stepping up to the plated and taking responsibility for his own actions and inactions which lead him to this court. George explains that he has given a lot of thought to how and where he went wrong. He acknowledges that much of it began when he started to associate with a bad group people and to abuse drugs. He used methamphetamine, marijuana, cocaine and anything else he could get his hands on.

He also separated from his family and friends. He wasn't able to work as he had been before. Everything that had meant so much to him before was pushed aside for his substance abuse desires and the new friends with whom he used those substances. He now recognizes the repercussions of the choices he made at that time.

It is often said that sometimes one must hit "rock bottom" before regrouping and beginning to rise. George has now been incarcerated since July of last year. While this has been his "rock bottom" it has also forced him to get clean; that is the "silver lining." Now that he is clean, he is thinking more clearly and has committed himself to continuing his journey upward. He plans to work hard to gain meaningful employment that will allow him to provide for his children. He is also committed to helping his parents who have helped him through his time of struggles. Finally, he is ready to return to the church where he will reengage spiritually. He has realized that all of those things were present in his life when he was last happy and well and were all abandoned during his downward fall. He prays for the opportunity to do all of those things he understands must be done in order to move forward with a productive life and to regain the satisfying life he once had.

## Nature and Circumstances of the Offence

While, George Norman's Presentence Investigation Report quantifies the "intended loss amount" in this case at $65,493.72, while the "actual loss amount" was $2,497.01. (PSR Para. 20) The intended loss amount includes not only what George was directly involved with and had knowledge of. George stated during his interview with law enforcement that he doesn't even know Christi Misocky, the ringleader of the conspiracy. Likewise, Ms. Misocky told authorities that she

didn't know George. So while George did know Howard Anderson and was aware of much of what Anderson was doing, he was unaware of the specifics of what Misocky was doing. He certainly was unaware of her attempts to buy a car with fraudulent checks. He had never been to her home or office and did not have direct knowledge of the $35,535.99 worth of checks already made out. George understands that, although he did not have direct knowledge of the above, he was aware that Misocky could be using the counterfeit instruments he helped to create in ways known only to her. He is not saying he is innocent with regard to those things, only that his direct knowledge and the lack thereof may be taken into account when determining his sentencing. Again, the damages that he was directly involved with and had direct knowledge of was $2,497.01, a number that may be more indicative of the "nature and circumstances of the offence."

**V.     FACTORS TO BE CONSIDERED IN DETERMINING A PARTICULAR SENTENCE TO BE IMPOSED UNDER 18 U.S.C. § 3553(a)(2)**

Pursuant to 18 U.S.C § 3553 (a) the Court should impose a sentence sufficient, but not greater than necessary to comply with the purposes of Paragraph (2). In determining the particular sentence to be imposed, the Court should consider the need for the sentence imposed to satisfy the goals of:

(a)(2)(A). Retribution
(a)(2)(B)  Deterrence
(a)(2)(C). Protection of the Public
(a)(2)(D). Rehabilitation

A.  Retribution:     George Norman recognizes the seriousness of the offense and is extremely remorseful about his conduct. He has been given three points for accepting

responsibility for his actions, which he has. He has self-examined his life and circumstance and he has an understanding of how he got to this point in his life. One thing that is certain is that these events represent a classic example of how devastating drug abuse can be to the people involved and their loved ones, as well as any other victims. He has been punished and now he is ready to make amends.

As stated above, sometimes, one has to hit "rock bottom" before one can begin to rise. Mr. Norman has fallen from a place where he had a good job, a good home and a loving family to a place where he is driven by his demons to the point where he finds his self here today. He has reached his "rock bottom" and he prays for the opportunity to continue to climb out of the hole he has dug for himself. . Retribution for George begins with loss of all of those things that again most important to him.

B. Deterrence: Any similarly situated individual would certainly be deterred from the conduct herein if they gave any thought to the consequences of Mr. Norman's actions. The loss of the life he had, the impact on his family, together with the financial impact, should act as a deterrence to people considering such actions. If the consequences suffered by the defendant in this case are not sufficient to deter a wrongdoer, one would have to wonder whether an active sentence would add any further deterrence.

C. Protection of the Public: As stated hereinabove, George has been incarcerated and away from his family since the middle of last summer. He has accepted responsibility for his actions. He understands that, even if he is not sentenced to further incarceration, he will be on supervised release for some time. He will be constantly monitored and his every action will be

scrutinized. While he acknowledges what will be a loss of some freedoms, he recognizes the additional motivation that scrutiny will bring for him to continue to work through the problems he is facing. George also acknowledges that, although his actions have been serious and harmful to those victims, he still has the chance to begin to make up for his past indiscretions. He is simply asking for that chance.

He will be sentenced to up to three years of supervised release where he will be constantly monitored be the United States Probation Office. He will be constantly and often tested for drug use. He will be required to obtain and maintain stable employment. He must refrain from and all criminal activity. He must comply with not only those requirements, but with all of the conditions set forth by the Probation Office. Should he fail to do those things, he can and will be sent to prison. All of that will provide sufficient and significant safeguards for the public.

D. Rehabilitation:    George understands the need to continue to be drug free and law abiding. While he has been drug-free since his arrest last July, he is prepared to do whatever is necessary to continue to so live. He also understands that he needs treatment in order to move forward effectively. Such treatment can be made a part of his supervised release and he can be continually monitored to ensure that he does not stray from the path. Rehabilitation is the goal, but it does not have to come with incarceration. George prays for a sentence that provides for supervised release but without incarceration. As set forth hereinabove, the conditions of supervised release will provide additional motivation for rehabilitation

NEED TO AVOID UNWANTED SENTEINCING DISPARITIES

Pursuant to 18 U.S.C. § 3553 (a)(6), disparities in sentencing of the defendant and similarly situated codefendants is to be avoided when possible. Here, this defendant's

codefendants have previously been convicted and sentenced and both of them were sentenced to time served. A similar sentence of time served for this defendant would certainly be in line with this section of the statute.

### RESTITUTION

Pursuant to 18 U.S.C. § 3553 (a)(7), restitution is to be considered. As stated above, as part of his supervised release, George will have to maintain employment which will make him better able to begin to pay back what he has helped to take.

### THE KINDS OF SENTENCES AVAILABLE

Pursuant to 18 U.S.C. § 3553(a)(3), the Court in determining the particular sentence to be imposed should consider the kinds of sentences available. The Court has broad authority to structure sanctions and individualize a sentence. Effective punishment accomplishes several important goals of the criminal justice system; punishment of an individual defendant, deterrence of defendant and others from committing similar offenses and reflecting the seriousness of the crime are all legitimate goals of effective punishment. One goal, however, of effective punishment is the reformation and preparation of sending a defendant back into society. One of the keys to effective punishment must be weighed by the position the defendant is in when he gets out of prison and back into society. Ultimately, reformation should go hand in hand with punishment. Punishment too severe or harsh will frustrate this goal of returning a defendant to society at the appropriate time after a sufficient period of punishment has passed. Incarceration for any period is a severe punishment for a 36-year-old person with 3 children, an 83-year-old father and a mother who is recovering from recent knee surgery. Any incarceration is in and of

itself a severe punishment. This is particularly true where a defendant like Mr. Pryor has only an insubstantial history of violence. (Simple assault involving argument with roommate over payment of the rent.) The Defendant respectfully submits that a sentence below the advisory guidelines will not offend any principles of punishment, deterrence, or reflecting the seriousness of the crime. For purposes of individual deterrence, a sentence in the advisory guideline range will not have any greater deterrent effect on Mr. Norman than a sentence below the guideline range accompanied with a period of supervised release. An unduly harsh sentence will not further impress upon Mr. Norman the wrongfulness of his conduct or cause him to internalize the wrongfulness of his conduct any more than the already severe consequences.

## CONCLUSION

The defendant requests that the Court consider the matters set forth above in determining an appropriate sentence.

Respectfully submitted,

s/W. Tracy Brown
W. Tracy Brown
1824 Alice Drive
Charleston, South Carolina
(843) 714-0341

Charleston, South Carolina
January 22, 2023